IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| STEVEN SWANBERG, | ) | 8:07CV420 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

The issue presented by this Social Security appeal is whether, as determined by the Commissioner, substance abuse was a contributing material factor to the plaintiff's disability during the period from October 1, 2002, until October 13, 2004, such that he is not entitled to receive benefits for this 2-year period. I will reverse the Commissioner's decision and remand for further proceedings.

## *I. BACKGROUND*

The plaintiff, Steven Swanberg, applied for disability insurance benefits and supplemental security income benefits on July 8, 2004, claiming that he had become disabled on July 1, 2003, due to depression and alcohol problems. The alleged onset date of disability was later amended to October 1, 2002. The applications were denied on November 30, 2004, with the state agency finding that Swanberg would not be disabled if he stopped using drugs and alcohol. The same finding was made on reconsideration of the applications on February 24, 2005.

At Swanberg's request, an administrative hearing was held on October 23, 2006. Testimony was provided by Swanberg, by Amanda Silke, a Salvation Army

community support worker, by Thomas England, Ph.D., a clinical psychologist (medical expert, or "ME"), and by Anita Howell, a vocational rehabilitation counselor (vocational expert, or "VE"). The ME and VE were both under contract with the Commissioner. Swanberg was represented by an attorney. The administrative law judge ("ALJ") issued a partially favorable decision on November 22, 2006, in which he concluded that Swanberg has been disabled since October 13, 2004.

The evidence presented at the hearing shows that Swanberg has a history of depression and alcoholism. On October 1, 2002, he was seen in the emergency room at the Mayo Clinic after a suicide attempt. He was seen there again on December 1, 2002, with alcohol withdrawal symptoms. On September 18, 2003, a mental health clinic in Phoenix diagnosed Swanberg with major depressive order and alcohol dependence. His global assessment of functioning ("GAF") score was 30. Swanberg was admitted to a Phoenix hospital for acute alcohol intoxication and tremors on February 22, 2004. On June 7, 2004, he was admitted to the Nebraska Medical Center following an extended drinking bout and attempted suicide. The diagnosis was alcohol dependence; physiological dependence; alcohol intoxication; alcohol withdrawal; alcohol-induced depression versus major depression; and possible anxiety disorder. Swanberg's GAF score was 30. Two weeks later Swanberg was discharged to psychiatric care for further therapy of his alcoholism. He was provided inpatient services at the Spring Center between June 18-23, 2004. A psychiatric evaluation included diagnoses of acute alcohol intoxication with suicidal depression; major depressive disorder–unipolar and recurrent; rule out bipolar disorder; and alcohol dependence. When discharged from the Spring Center, Swanberg's GAF score was 45-50.

Swanberg was treated for acute intoxication at the Nebraska Medical Center emergency room on July 16, 2004. He was hospitalized at the Nebraska Medical Center between September 13-20, 2004, after presenting at the emergency room for alcohol detox and suicide ideation. He was diagnosed with major depressive disorder, recurrent type; alcohol dependence; and alcohol induced mood disorder.

His GAF score was 41. Swanberg was readmitted to the hospital on September 24, 2004, and treated for alcohol withdrawal. His GAF score was 35 at the time of admission, and between 50-55 when he was discharged to the Spring Center on October 1, 2004.

On October 13, 2004, Swanberg was admitted to the Hastings Regional Center. He was diagnosed with Bipolar I, current episode, depressed; alcohol dependence; and anxiety disorder NOS. His GAF score was 40. Swanberg remained at the regional center until February 25, 2005, when he left the facility against medical advice. His GAF score had decreased to 35.

Swanberg underwent a psychiatric evaluation at Lutheran Family Services on May 2, 2005. He told the consulting psychiatrist that he had gone to a bar after leaving the Hastings Regional Center and had passed out from intoxication. He also said he had been committed to the Lincoln Regional Center for six weeks, but had been discharged on April 15, 2005. The consulting psychiatrist diagnosed major depressive disorder; alcohol dependence; and personality disorder NOS. Swanberg's GAF score was 40. Swanberg testified that he had been sober since October 2004, except for the one incident in February 2005.

In his decision, the ALJ evaluated Swanberg's disability claim by purportedly following the five-step sequential analysis prescribed by the Social Security regulations. *See* 20 C.F.R. §§ 404.1520 and 416.920. Among other things, the ALJ found that:

> (1) Swanberg has not engaged in any substantial gainful activity since October 1, 2002. (Tr. 18, 26.)
>
> (2) Swanberg "has the following medically determinable impairments which have imposed more than slight limitations upon his ability to function: major depressive disorder/bipolar disorder, generalized anxiety disorder, personality disorder, and alcohol dependence, currently in sustained remission." (Tr. 23, 26.)

3

(3) Swanberg does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 26.)

(4)(a) During the period from October 1, 2002, to October 13, 2004, *independent of substance abuse*, Swanberg "would have possessed the capability of performing the exertional demands of light work (which generally involves lifting 20 pounds occasionally and 10 pounds frequently, and sitting for 2 hours and standing for 6 hours in an 8 hour day). However, he was unable to have frequent contact with the public or co-workers or work in coordination with and proximity to others without distracting or being distracted. In addition, [Swanberg] would have had moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration." (Tr. 25.)

(4)(b) Since October 13, 2004, *independent of substance abuse*, Swanberg "has been able to perform the exertional demands of light work (which generally involves lifting 20 pounds occasionally and 10 pounds frequently, and sitting for 2 hours and standing for 6 hours in an 8 hour day). However, he has been unable to perform more than simple tasks requiring 1, 2, 3 steps; maintain attention span; have frequent contact with the public or co-workers; maintain production and pace or close supervision; tolerate change in the work place setting; accept instruction and criticism from supervisors; perform activities within a schedule, maintain regular attendance with customary tolerances; sustain an ordinary routine without special supervision; or complete a normal workday without psychological limitations or an unreasonable number or length of breaks. In addition, [Swanberg] has moderate restriction of activities of daily living; moderate to marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and three episodes of decompensation of extended duration." (Tr. 25-26.)

4

>    (5)(a)  During the period from October 1, 2002, to October 13, 2004, *independent of substance abuse*, Swanberg would not have had the residual functional capacity to perform his past relevant work as a construction engineer and land surveyor, but he would have been capable of performing light, unskilled work, such as that of a housekeeper/cleaner, marker, and routing clerk.  Because such occupations exist in significant numbers in the region, Swanberg cannot be considered disabled during this period. (Tr. 25.)
>
>    (5)(b) Since October 13, 2004, Swanberg has lacked the residual functional capacity to perform any type of work activity on a sustained basis. He therefore is disabled.  (Tr. 26.)

Swanberg's request for further review was denied by the Appeals Council on September 21, 2007.  The present action was filed on October 19, 2007.

## *II.  DISCUSSION*

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001).  "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *Id*. at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome.  *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992).  Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995); *Smith*, 982 F.2d at 311.

5

The Social Security Administration uses a five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920.

> At the first step, the claimant must establish that she has not engaged in substantial gainful activity. The second step requires that the claimant prove she has a severe impairment that significantly limits her physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that her impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove she lacks the residual functional capacity to perform her past relevant work. Finally, if the claimant establishes that she cannot perform her past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

Since 1996, however, the Social Security Act has provided that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, if the 5-step analysis results in a finding of disability but there is evidence of alcoholism or drug addiction, then an additional 2-step analysis must be undertaken by the ALJ:

> First, the ALJ should determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use. Then, the ALJ must determine whether the claimant's remaining limitations would be disabling. If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied. If the claimant would still be considered disabled due to his or her remaining limitations, the claimant is disabled and entitled to benefits.

*Rehder v. Apfel*, 205 F.3d 1056, 1059-60 (8th Cir. 2000) (citations omitted).

In *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003), the Eighth Circuit reversed and remanded for further proceedings where an ALJ did not strictly adhere to the 5-step plus 2-step analytical process that has been outlined above. In that case, as here, the ALJ simply disregarded any alcohol-related impairments at step four and made a determination from the resulting RFC that the claimant was not disabled. The Court of Appeals ruled that the ALJ's conflated approach was legal error, stating:

> The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard. *See* 20 C.F.R. § 404.1535 (mandating procedures for consideration of substance use disorders); 20 C.F.R. § 404.1527 (mandating procedures for evaluating physicians' opinions); 20 C.F.R. § 404.1520a (mandating procedures for evaluating mental illness).[1]
>
> The plain text of the relevant regulation requires the ALJ first to determine whether [the claimant] is disabled. 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). The ALJ must reach this determination initially, as the ALJ did in *Fastner v. Barnhart*, 324 F.3d 981, 986 (8th Cir. 2003), using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001). The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the

---

[1] The cited regulations pertain to disability insurance benefits. Comparable regulations exist for supplemental security income benefits. *See* 20 C.F.R. §§ 416.935, 416.927, and 416.920a.

7

> evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability. *See* 20 C.F.R. § 404.1527.
>
> If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2). We have previously noted that when the claimant is actively abusing alcohol or drugs, this determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped. *Pettit*, 218 F.3d at 903. Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other.
>
> Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow. The alternative procedure adopted by the ALJ in this case remains inconsistent with the regulations binding on claimants, the ALJs, and this court. The ALJ's decision reflects legal error.

*Id.*, 348 F3d. at 693-95 (footnotes omitted). "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Id.* at 693. "In colloquial terms, on the issue of the materiality of alcoholism, a tie goes to [the claimant]." *Id.*

In the present case, the ALJ made a generalized finding that "the Claimant has been disabled since his alleged onset date of disability [October 1, 2002]" (Tr. 18),

8

but he failed to failed to make a RFC determination that included all of Swanberg's mental and physical limitations, without regard to his abuse of drugs and alcohol, during the period from October 1, 2002, until October 13, 2004.  In fact, he did not even ask the medical expert to describe Swanberg's limitations during this period. Dr. England simply testified, without any explanation, that alcohol use materially affected Swanberg's impairments before March 2005.  (Tr. 532.)  The ALJ moved this date back to October 13, 2004, after Dr. England acknowledged on cross-examination that there were no indicators in the records of the Hastings Regional Center that Swanberg could maintain full-time employment while he was at that facility.  (Tr. 539-40.)

Although not mentioned in the ALJ's decision, he appears to have relied upon mental RFC assessment and psychiatric review technique forms that were completed by a state agency consulting physician, Robert S. Berhns, M.D., on November 11, 2004.  (Tr. 303-14.)  The RFC form has the words "when sober" written upon it, so Dr. Berhns apparently attempted to assess what Swanberg's mental limitations would be without alcohol usage.  One significant difference between Dr. Berhns' assessment and the ALJ's assessment for the period before October 13, 2004, is that the doctor found Swanberg to be "moderately limited" in his ability to respond appropriately to changes in the work setting.  The ALJ did not include this limitation in his decision, although he did ask the vocational expert a hypothetical question that included this limitation.  The VE indicated that there would not be any jobs that an individual with this limitation and the others identified by the ALJ could perform; only after the ALJ removed this limitation could the VE testify that housekeeper/cleaner, marker, and routing clerk jobs could be performed by such an individual.  (Tr. 544-45.)

Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, the RFC is a medical question.  *Lauer v. Apfel*, 245 F.3d 700, 703-04 (8th Cir. 2001).  Thus, some medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the

9

workplace. *Id.* at 704. "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Dr. Berhns' opinion is the only medical evidence in the record to address Swanberg's ability to function in the workplace before October 13, 2004. Because the ALJ did not discredit this physician's opinion, he was not free to ignore part of it by rephrasing his hypothetical question to eliminate a work-related restriction that the VE testified would require a finding of disability. "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007).

### III. CONCLUSION

The result reached by the Commissioner in this case is unusual, in that the claimant was awarded benefits only after he stopped drinking, when his mental and physical condition might reasonably be expected to have improved. The only explanation provided by the ALJ for denying benefits prior to October 13, 2004, is that "while the Claimant was diagnosed with major depressive disorder, alcohol seemed to be his biggest problem." (Tr. 23.) The ALJ failed to make an actual RFC determination that included alcohol-related symptoms prior to October 13, 2004, and his hypothetical RFC determination (excluding the effects of substance abuse) is not supported by medical evidence. I therefore find that the ALJ's decision is contrary to law and not supported by substantial evidence on the record as a whole.

IT IS ORDERED that judgment shall be entered by separate document generally providing that the final decision of the Commissioner is reversed in part and the case remanded for further proceedings consistent with this opinion.

July 11, 2008.                  BY THE COURT:
                                                         s/ *Richard G. Kopf*
                                                         United States District Judge